## PELT v. LOUISIANA STATE LIVE STOCK SANITARY BOARD.

### No. 1794.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1938.

S. I. Foster, of Leesville, for appellant.

Olin D. Moore, of Many, for appellee.

Le BLANC, Judge.

In this suit, plaintiff in his petition alleges that the Louisiana State Live Stock Board, defendant herein, acting under the provisions of Act No. 6 of 1930, inaugurated a system of dipping live stock in Vernon parish during the year 1936, and that, with the exception of a small district, dipping was discontinued in December of that year, or January of the following year, and the territory was declared tick-free; that that portion of the parish in which dipping was ordered continued was in ward five; and that he had cattle which ranged in that ward, but some also ranged within the territory which had been declared tick-free. He alleges further that on July 14, 1937, he carried two calves, along with other cattle, to be dipped in the restricted territory, and that, while being dipped, the two calves referred to swallowed some of the solution contained in the dipping vat, became strangled, and as a result they died the same afternoon.

Plaintiff also alleges that on July 28, 1937, he carried a certain cow and calf to the vat, along with other cattle to be dipped, and that the said cow was there trampled upon by other cattle in the dipping pen, and killed.

He alleges further that on August 24, 1937, the agents and representatives of the defendant board, unlawfully, and without his knowledge or consent, drove eighteen head of his cattle from the tick-free territory in which they ranged into the restricted district, some four or five miles, on a hot day to a vat in the northern part of the restricted district, and there dipped them and afterwards unlawfully impounded them on the ground that he should pay $3 per head for such dipping. He sets out that the reason for his not dipping them was because of some confusion in the dipping dates and that he never refused to dip them. He avers that on the night of August 24, 1937, his cattle escaped from the pen where they had been impounded, and that on the following day he and his three sons, each on a horse, started to hunt the cattle, and after two days they found fifteen head wandering about the woods, many miles from their range. One of the fifteen head, he alleges, was found with a broken leg and unable to be driven. This was a choice beef which he avers had been injured in the process of dipping. The remaining three head of the herd of eighteen were never found.

He alleges further that on September 2, 1937, the defendant board, acting through its agents and representatives, went into the tick-free territory again, and, claiming to be after the eighteen head of cattle which they had dipped on August 24, 1937,

and to have a privilege and lien on the same for dipping charges, carried away from the said territory eleven head of his cattle to some place not known to him. He avers that the eleven head of cattle so taken were not some of the same which had been unlawfully dipped on August 24, 1937, and upon which the defendant board had a lien or privilege, and that its action in so taking them on September 2, 1937, was a trespass upon his property.

In the prayer of his petition, plaintiff prays for judgment against the defendant in the sum of $168, which we understand is made up of the following items: $28 for the two calves which died as a result of drinking the dipping vat solution on July 14, 1937; $35 for the cow which was trampled on and killed in the dipping vat pen on July 28, 1937; $75 for the injured beef and the three head of cattle which were lost after escaping from the pen in which they had been impounded by defendant on August 24, 1937; and $30 for the expenses which he and his sons were put to in locating and corralling the escaped cattle.

The defendant filed first an exception to the jurisdiction of the district court in Vernon parish, on the ground that its domicile was in the city of Baton Rouge.

It also filed an exception of no cause or right of action, and a further exception to plaintiff's right to maintain his suit against it, as it is an arm, instrument, and agency of the State and is immune from suits in the courts of this State without its consent and legislative authorization.

The district judge overruled the exception of no cause or right of action and sustained the exception to the jurisdiction and also the exception based on the ground of immunity from suit. He accordingly dismissed plaintiff's suit, and this appeal was taken.

■ The defendant makes no reference whatever in this court to the exception of no cause or right of action which was overruled in the lower court, and we take it that the same has been abandoned.

It becomes necessary first for us to consider the exception to the jurisdiction which was sustained in the lower court.

The Louisiana State Live Stock Sanitary Board was created by Act No. 274 of 1908. The act creating it designates the city of Baton Rouge as its "official headquarters." Plaintiff in his petition also alleged that its domicile is in the city of Baton Rouge. Ordinarily, therefore, it would seem that a suit against the defendant should be brought in the parish of East Baton Rouge, as the general rule prescribed by our own Code of Practice, article 162, is that in civil matters one must be sued before the judge having jurisdiction over the place where he has his domicile or residence. The rule, as stated in that article, however, is subject to certain exceptions expressly provided for by law. One of these exceptions is to the effect that in all cases where a person, firm, or corporation commits a trespass, or does anything for which an action for damages shall lie, such person, firm, or corporation may be sued in the parish where such damage is done or trespass committed. Code Prac. art. 165, subd. 9.

■ We are fortunate in this case in having before us an opinion handed down only a few months ago by the Court of Appeal of the Second Circuit in the case of Cope v. Louisiana State Live Stock Sanitary Board, 176 So. 657, which was an action similar to the one presently before us, involving a claim for damages for the loss by death of a mule which had been poisoned while being dipped. The very same pleas and exceptions here presented had been filed on behalf of the same defendant, and were thoroughly considered and passed on by the court. It was there held that the action was one which came within the exception to the general rule of venue which we have just stated, and we fully agree with that ruling. The plaintiff has fully set out a cause of action on facts alleged which would constitute a trespass upon or an invasion of his property rights, for which he has suffered damage.

It is further contended in this case, however, that, the suit being one against the State or one of its agencies, the exception cannot apply because the State cannot be included within the terms "person, firm or corporation." We doubt very much that a board, such as this defendant, which, after all, is a creature of a State law just as is any private corporation, is exempt from the exceptions to the general rule of venue under the article of the Code of Practice referred to. The article providing for the exception makes no distinction between corporations, and there seems to us to be no sound reason why it should not apply to public, quasi public or political corporations, the same as to private corporations.

Moreover, it would seem that, under the provisions of the very act creating the defendant board, the intention is that suits of this nature should be brought in the court of the parish in which the damage claimed arose. Section 3 of the act specifically provides that any cattle killed in the process of dipping shall be compensated for to the owner, the value to be determined by a board composed of members appointed by the police jury of the parish where the dipping is being conducted, the local district judge, and the defendant board herein. To force a cattle owner residing in Vernon parish, as the plaintiff herein, who has suffered the loss of cattle of the value of $100, let us say, to go to the district court of Baton Rouge parish to litigate his claim against the defendant board, would impose a hardship which would deter the average citizen, in our opinion, from pursuing a remedy which the law gives him. That is why we think the legislature wisely inserted the provision in the act regarding compensation to the owner for cattle killed in the process of dipping and prescribed the method of having the value determined locally as far as possible.

It is our conclusion that the district court of Vernon parish was vested with jurisdiction ratione personæ, and that its ruling sustaining the exception to the jurisdiction was erroneous and should be overruled.

We come now to a consideration of the other exception which was sustained below, that is the one which may be referred to as immunity from suit without consent or legislative authority. Plaintiff has judicially acknowledged that the defendant is a State agency and it has not pointed out any law enacted by the Legislature which specifically authorizes a suit against it. As plaintiff has to concede the constitutional inhibition, article 3, § 35, against suing the State without its consent or authority, it becomes important to consider on what theory the suit could otherwise be maintained.

■ In the case of Cope v. Louisiana State Live Stock Sanitary Board, supra, this proposition was also before the court and received its most serious consideration. It was there held, in effect, that the constitutional provision which protected the State against suits without its consent has to yield in some instances to those broader provisions, in our fundamental law, comprised within the Bill of Rights, among which is the right to adequate com-

pensation for the taking of private property for public purposes. Const. art. 1, § 2. This provision, it was shown, is self-executing, and, by reason of it, "an agency or political sub-division of the State which has taken or damaged private property for public purposes without paying adequate compensation may be sued therefor, irrespective of the existence or non-existence of legislative authorization for the suit." 12 Corpus Juris, verbo, Constitutional Law, § 55, and 6 Ruling Case Law, verbo, Constitutional Law, § 55, are cited as authority, to which we may add the more recent authority of American Jurisprudence, verbo, Constitutional Law, § 74. In creating the defendant board, and specifying its duties and responsibilities, the Legislature recognized the principle of law that private property cannot be taken for public purposes without adequate compensation, for in the very act under which it exists it is provided, as we have already shown, that "all cattle * * * killed or injured in the actual process of dipping done under the supervision of the Louisiana State Live Stock Sanitary Board, or its quarantine inspector, * * * upon satisfactory proof, shall be compensated for to the owner or owners thereof by the Louisiana State Live Stock Sanitary Board upon the value fixed by a board or commission of appraisers." Here we find a positive legislative provision for compensation with what, it would seem to us, is an implied authority to the owner of cattle killed or injured by dipping to sue the defendant board, for otherwise he might be said to have been granted a right without a remedy to enforce it.

We are referred to the same authorities by defendant's counsel as was the court in the Cope Case, supra, and any remarks we might make concerning them, as well as the decisions relied on by the court in disposing of the issue favorably to the plaintiff, would be more or less a restatement of what was said by the court in that case. As already intimated herein, we find ourselves in thorough accord with the views therein expressed.

■ Mention is made in this case about the police power of the State in carrying out a work such as that of tick eradication, but the mere fact that the State enjoys such power cannot, in our opinion, deprive a citizen of his right to compensation for his property under our Bill of Rights, and especially when the State agen-

cy exercising that power, such as the defendant board, is ordered to make such compensation by the very statute creating it.

We are of the opinion that the judgment appealed from is erroneous and should be reversed, and it is for the reasons stated herein now ordered that the same be, and it is hereby, set aside, annulled, and reversed, and it is further ordered that the exceptions to the jurisdiction ratione personæ and of the defendant's right of immunity from suit without consent be both overruled, and that the case be remanded to the lower court for further proceedings, according to law. The costs of this appeal are to be borne by the defendant, and all other costs are to abide the final judgment in the case.