[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1071 
The above captioned cases have been consolidated for decision. They are actions against the State of Louisiana and the Department of Agriculture and Immigration for recovery of the value of property destroyed in a fire which resulted from certain spraying operations conducted by agents of the Department of Agriculture for the disinfection of farm produce stored upon the premises of the Texas and New Orleans Railroad Company at Carencro, Louisiana. The cases are founded upon the same facts which are not disputed and which may be briefly stated as follows:
Act No. 314 of 1926 provides that the shipment or movement of sweet potatoes, vines, plants and slips into, out of or within the State must be accompanied by a certificate *Page 1073 
of inspection signed by the State Entomologist. It also vests in the Commissioner of Agriculture and Immigration plenary power to deal with sweet potato insect pests and, to this end, to promulgate and enforce such rules, ordinances and regulations as in his opinion may be necessary to control, eradicate or prevent the introduction or spread of any and all contagious crop diseases and insect pests.
Pursuant to this authority, the Department of Agriculture has been conducting a systematic program for eradication of sweet potato weevils in territories declared by the State Entomologist to be control areas. In July 1944, the Parish of Lafayette was within the sweet potato weevil quarantine area and buildings and premises used in storage or handling of sweet potatoes came under the effect of the eradication program of the Department of Agriculture. Under this program, the Department maintained five or six trucks equipped with portable spraying units. Upon request, the Department would send one of the trucks to the location where the sweet potatoes were stored and its agents would spray and disinfect the entire premises. The owner of the sweet potatoes was required, under the regulations, to supply the disinfectant to be used but it was not compulsory for him to employ the facilities provided by the Department. Nevertheless, it appears that the sweet potato growers of the State have invariably taken advantage of the free services supplied by the Department. *Page 1074 
Plaintiffs, Angelle and Roy, are sweet potato growers. On July 13, 1944, they had deposited at the Texas and New Orleans Railroad freight station at Carencro, Louisiana, a quantity of sweet potatoes and certain other equipment. This railroad station was regularly used for the processing and handling of sweet potatoes for market and was the premise designated for disinfection under the rules of the Department of Agriculture. After the sweet potatoes were received for shipment, the railroad station agent contacted the Department of Agriculture and requested that it spray the sweet potatoes, the railroad premises and adjoining sheds so that certificates of inspection might be obtained. In accordance with this request, the Department sent one of its trucks, complete with spraying unit and manned by two experienced operators. Upon its arrival at the railroad premises, the station agent pointed out two metal drums which he stated contained the disinfectant and the Department's employees filled the spray unit and commenced operations. During the course of the disinfecting work, one of the agents discovered a fire on the back end of the truck which held the mixing tank and the spraying machinery. The flames spread rapidly and, despite preventative measures, the railroad station, processing machine and sweet potatoes were destroyed.
Thereafter, Angelle, Roy and the railroad's insurer, Hartford Fire Insurance Company, filed these actions for recovery *Page 1075 
of their respective losses occasioned by the fire. The State and the Department filed exceptions to the jurisdiction of the court, which were founded on constitutional governmental immunity from suit without legislative consent, and also interposed exceptions of no right or cause of action. These exceptions were overruled and, after issue joined and trial had, there was separate judgment in favor of each plaintiff as follows: Angelle, $13,112.08; Roy, $3,746.34; Hartford Fire Insurance Company, $6,465.11.
The State and the Department of Agriculture have appealed from the adverse decisions.
In this court, the attorney general rests his case on the sole proposition that the exception to the jurisdiction was erroneously overruled below as the State is immune from suit in the absence of its consent given in the manner provided by Section 35 of Article III of the Constitution of 1921.
The principle that the sovereign cannot be sued in its own courts without the consent of the Legislature is so fundamental that citation of authority would be superfluous. Suffice it to say that it is the universal rule, given full recognition in our Constitution. And, by the joinder of the Department of Agriculture and Immigration as a party defendant, plaintiffs did not enhance their rights in any respect as it is merely one of the administrative state departments, see Article VI, Sections 13 and *Page 1076 
14 of the Constitution, without separate existence from the State for purposes of suit.
Counsel for plaintiffs, fully appreciating the difficulty to be encountered by instituting suit against the State without legislative consent, have contrived the theory that the destruction of their clients' property by fire, while it was being subjected to disinfection by state agents, was an appropriation of the property for a public purpose, violative of Article I, Section 2 of the Constitution, for which suit for compensation will lie against the State without its consent. Section 2 of Article I of the Constitution declares, in part: "* * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
This provision, which is similar to that appearing in other State Constitutions, has been generally regarded to be self-executing. See 16 C.J.S., Constitutional Law, § 49, and authorities there cited. Hence, where private property has been appropriated by the State "for public purposes" the right of the owner to recover adequate compensation will be entertained by the courts as an exception to the principle that the sovereign cannot be sued without its consent.
In view of this, it becomes necessary to determine the meaning of the constitutional prohibition against the taking *Page 1077 
or damaging of private property "except for public purposes". We think that the statement refers exclusively to the power of eminent domain, i. e., the intentional or purposeful expropriation or appropriation of private property for a public use or convenience. In the instant cases, we experience great difficulty in perceiving that the destruction of the station and the sweet potatoes resulted from anything more than the negligent acts or omissions of the agents of the Department of Agriculture. The loss for which compensation is sought resulted exclusively from a fortuitous event — a fire — as far removed from a deliberate appropriation under eminent domain as anything could be; forsooth, a wholly unintentional destruction which served no public purpose whatever.
Counsel for plaintiffs argue that, since the Department of Agriculture was engaged in a systematic program for the eradication of sweet potato weevils, all acts of state agents in connection with the program were for a public purpose and that, therefore, it follows that any destruction of private property, though unintentional or unnecessary, is a taking of the property for a public purpose.
This argument is not sound because it fails to reckon a distinction between the destruction and damaging of private property by agents of the State while engaged merely in the performance of a governmental function and the deliberate taking or necessary damaging of property for the *Page 1078 
public use and benefit. In the first instance, the destruction or damage occurs not for a public purpose but by reason of the negligence of the state officers or agents. In the latter, the property is taken or damaged under the power of eminent domain; it is an appropriation for public purposes for which adequate compensation is guaranteed to the owner by Section 2 of Article I of the Constitution.
A reading of the petitions in the instant cases makes manifest that the causes of action are founded on the negligence of the Department of Agriculture — (and this, despite the attempts of plaintiffs to avoid the conclusion that their claims are ex delicto) for numerous acts of fault or omissions on the part of the Department are therein charged to be the proximate cause of the fire. For example, it is alleged that the gasoline engine used in the spraying operation was old and in an unsafe running condition; that the exhaust pipe was too short and pointed downward in the direction of the wooden flooring of the body of the truck; that gasoline leaked from the carburetor and that the engine frequently backfired and emitted sparks. Many other failures are charged and it is concluded that a "tremendous fire hazard" was permitted to exist by those charged with the maintenance and operation of the spraying equipment.
Under such allegations, it becomes clear that the real basis for the asserted liability is the dereliction by state agents and not *Page 1079 
appropriation of private property by the State. But the doctrine of respondeat superior has no application to the state and it may not be sued for torts of its agents even though it has otherwise waived its immunity to suit. Special consent, in the manner provided by Section 35 of Article III of the Constitution, must be granted to authorize the institution and maintenance of an action ex delicto.
In Hughes v. United States, 230 U.S. 24, 33 S.Ct. 1019, 1020,57 L.Ed. 1374, 46 L.R.A, N.S., 624, the Supreme Court had for consideration an appeal by the plaintiff from a judgment of the Court of Claims rejecting her action for damages to her plantation resulting from the dynamiting, by a federal officer in an emergency, of a levee along the Mississippi River adjacent to her property. She contended that the United States had taken her property "in the constitutional sense" and consequently, it was amenable to suit in the Court of Claims. The court, after stating the facts, dismissed the contention in the following language: "We do not stop, however, to further consider the subject, since whatever view be taken of the finding, (Court of Claims) the fact as to the use of dynamite would not in law amount to a taking by the United States, because in any event the mere act, to meet an emergency, of the officer, conceding, under the circumstances stated, that it was a wrongful act, cannot be held to be the act of the United States, and therefore affords no ground in any *Page 1080 
event for holding that the United States had taken the property for public use." (Words in parenthesis ours).
In Keokuk Hamilton Bridge Co. v. United States, 260 U.S. 125,43 S.Ct. 37, 38, 67 L.Ed. 165, the Court decided that the owner of a bridge pier which was injured by blasting by the Federal government in the bed of a river in a manner which, if the injury was caused by an individual, would be a mere tort, has no remedy against the government for the injury. In concluding thus, Mr. Justice Holmes observed: "However small the damage it may be true that deliberate action in some cases might generate the same claim as other forms of deliberate withdrawal of property from the admitted owner. United States v. Cress,243 U.S. 316, 329, 37 S.Ct. 380, 61 L.Ed. 746 [753]. But without considering how the line would be drawn when such action took place in the improvement of navigation, it is enough to say that this is an ordinary case of incidental damage which if inflicted by a private individual might be a tort but which could be nothing else. In such cases there is no remedy against the United States. See Bedford v. United States, 192 U.S. 217, 224,24 S.Ct. 238, 48 L.Ed. 414 [417]."
In cases where private property has been appropriated by the government for a public purpose, the Supreme Court of the United States has consistently held that suit for compensation will be entertained in the Court of Claims under the Tucker *Page 1081 
Act, 24 Stat. at L. 505, 28 U.S.C.A. § 41(20), on the ground that there is an implied contract on the part of the government to pay the value of the property. See Langford v. United States,101 U.S. 341, 25 L.Ed. 1010; Bigby v. United States,188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519; Tempel v. United States,248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; United States v. Great Falls Mfg. Co. 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846 and United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349,47 L.Ed. 539, and United States v. North American Transportation 
Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935. But no claims are sustainable against the United States unless there is an intentional taking of the private property — that is, a taking for a public purpose unrelated to a tortious destruction or damaging by an agent of the government.
The rule applies with equal force to suits against the State. The provisions of the Fifth Amendment of the United States Constitution and Section 2 of Article I of our Constitution are practically identical in respect to payment of just compensation for private property taken for public purposes. But these guarantees are limited to appropriations of property under the power of eminent domain and cannot be utilized as a means for permitting the State to be sued for the torts of its agents.
It would not be necessary to further pursue discussion of these claims were it *Page 1082 
not for certain pronouncements of this court and our Courts of Appeal which contain language and reasoning favorable to plaintiffs' contentions. They are Green v. Board of Com'rs,163 La. 117, 111 So. 619; McGeehan v. Board of Levee Com'rs,165 La. 241, 115 So. 473; De Moss v. Police Jury of Bossier Parish,167 La. 83, 118 So. 700, 68 A.L.R. 336; Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169; Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425; Murff v. Louisiana Highway Commission, 19 La.App. 847, 140 So. 863; Cope v. Louisiana State Livestock Sanitary Board, La.App., 176 So. 657, and Pelt v. Louisiana State Livestock Sanitary Board, La.App.,178 So. 644. We shall discuss these cases in order.
In Green v. Board of Commissioners, suit was brought by an owner to recover compensation for land used and destroyed for levee purposes under Section 6 of Article XVI of the Constitution. In addition, he sought redress for damage to his residence as a consequence of the negligent explosion, by employees of the Levee Board, of charges of dynamite which propelled the trunks and branches of trees through the air, causing them to fall upon the house. Obviously, the value of the land taken for levee purposes was recoverable under the specific provisions of the constitutional article. However, the court, without discussing the matter, affirmed that part of the judgment which permitted plaintiff to recover $330 for damage to his *Page 1083 
residence resulting from the negligent dynamiting of the levee.[1]
In McGeehan v. Board of Commissioners, supra, agents of the Levee Board entered plaintiff's land in a flood emergency and removed 300 cartloads of earth for levee purposes. When sued by the landowner, the Levee Board resisted on the ground that its agents had committed a tort and, consequently, it, being a public board, was not amenable to an action ex delicto. The District Court rejected the plea but it was sustained by the Court of Appeal. On writ of review, this court reversed the Court of Appeal and reinstated the judgment of the District Court on the ground that the action was not one sounding in tort but one under the constitutional provision rendering the Levee Board responsible for taking of private property for levee purposes.
Let us pause to consider the holdings in the Green and McGeehan cases. The ruling in the McGeehan case is in strict accord with our present views for, there, there was an intentional taking of the property for a public purpose. However, the Green case, insofar as it permitted the landowner to recover the damages resulting from the negligent dynamiting of the levee, unwittingly[2] introduced into our jurisprudence a doctrine contrary to the *Page 1084 
fundamental principle that the state and its subdivisions may not be sued for torts committed by officers and employees.
In De Moss v. Police Jury, supra, it appeared that the police jury, in widening and grading a parish road under the authority of Section 3369 of the Revised Statutes, found it necessary to tear down a fence situated on plaintiff's property which abutted the road. As a direct result, cattle entered plaintiff's land and damaged his crop of corn and cotton to the extent of $530. The District Court gave judgment in favor of plaintiff but the Court of Appeal reversed it on the general principle that police juries are state agencies with only delegated powers and that the parish could not be held liable for the acts and omissions of its officers any more than the state itself. On writ of review, this Court reversed the Court of Appeal on two grounds, (1) that Section 3369 of the Revised Statutes made it mandatory on the police jury to assess, as a parish charge, all damages sustained by any individual through whose land a roadway may be run and (2), moreover, since the damage to plaintiff's property was the proximate and natural result of the widening of the road, it was the taking or damaging of private property for public purposes within the meaning of Section 2 of Article I of the Constitution. *Page 1085 
There can be no doubt as to the correctness of the decision in the De Moss case in view of Section 3369 of the Revised Statutes which makes plain the intention of the Legislature that parishes undertaking road building shall be responsible for all damages done to private property resulting from such projects. However, the dicta of the court that property damaged as a proximate result of the widening of a roadway (even though the damage results from the torts of the road contractors) is the damaging of property for a public purpose within the meaning of Section 2 of Article I of the Constitution, cannot be maintained forasmuch as we view the constitutional provision as applicable only to cases where the taking or damaging of the private property is intentional or occurs as a necessary consequence of the public undertaking. We say "necessary consequence" because we envision cases where damage might be inflicted upon private property as a necessary result of the undertaking although the doing of the damage is unintentional and may not be foreseeable by the governmental agency.[3] In such matters, the damage is on a parity with the intentional taking or damaging under the power of eminent domain. On the other hand, damage to private *Page 1086 
property which occurs solely as a result of negligence and not as a necessary consequence of the public work, fits nowhere within the realm of eminent domain and the courts are without jurisdiction to entertain a suit of this sort against the sovereign.
The Booth and Murff cases, supra, are correctly decided but the reasons for the opinions are founded on the obiter dicta contained in the De Moss matter. These cases involved damage or appropriation of land in road construction projects and fall within the rule that there has been an intentional taking or damaging for a public purpose. However, in Nagle v. Police Jury, supra, the court erroneously, we think, allowed recovery of an item for damage to trees and shrubbery on land adjoining the highway by spread of fires which had been set by employees of the police jury, on the ground that it was a taking for a public purpose and cognizable under Section 2 of Article I of the Constitution.[4]
Expanding the doctrine of the De Moss case a step further, the Court of Appeal for the Second Circuit, in Cope v. Louisiana Livestock Sanitary Board, supra, and the Court of Appeal for the First Circuit, *Page 1087 
in Pelt v. Louisiana State Livestock Sanitary Board, supra, declared that the destruction of animals by negligent dipping under section 3 of Act No. 6 of 1930, the tick eradication law, was cognizable against the state because it was the taking, i. e., destruction, of private property for a public purpose, without just compensation, in violation of the constitutional guarantee. Plaintiffs rely heavily on these decisions but we cannot follow them — for, as we have stated above, the destruction of the animals was not for a public purpose, i. e., the tick eradication program, but was occasioned solely by the negligence of the employees of the Livestock Sanitary Board while engaged in performance of a public duty.[5]
In concluding that plaintiffs are not entitled to maintain these actions against the State, we think it apt to remark that to permit plaintiffs' theory to prevail would subject the State to an action for damages in all cases involving injury or destruction of private property resulting from the torts of its agents when acting in an official capacity — thus, effectually repealing the universal rule to the contrary. We reiterate that we cannot perceive how the unintentional destruction of the station and the other property of plaintiffs by the fire was for a public purpose; the mere fact *Page 1088 
that the fire occurred whilst the agents were engaged in performing a public duty was an incident wholly disconnected with the object of the Department of Agriculture's program.
The judgments appealed from are reversed and the suits are dismissed.
[1] O'Neill, C. J., dissented from the allowance of this item of damage.
[2] The Court, in approving allowance of this item, merely states "We see no reason to make any change." See163 La. at page 120, 111 So. at page 620, 68 A.L.R. 336.
[3] The Supreme Court of the United States inferentially recognizes this in Sanguinetti v. United States, 264 U.S. 146,44 S.Ct. 264, 265, 68 L.Ed. 608, where it remarks "It was not shown that the overflow was the direct or necessary result of the structure; nor that it was within the contemplation of or reasonably to be anticipated by the government."
[4] O'Niell, C. J., dissented from the allowance of this item.
[5] Any person whose livestock is damaged or killed as the result of dipping for the eradication of the cattle tick, where such dipping is done under the supervision of the Livestock Sanitary Board is entitled to recover from the Parish, in which the dipping takes place, a reasonable compensation for the value of the animal destroyed. See Act, No. 56 of 1918.