In the majority opinion, after the citing of numerous decisions of the U.S. Supreme Court, it is stated that "* * * no claims are sustainable against the United States unless there is an intentional taking of the private property * * *." Unquestionably, the statement is correct, for theFifth Amendment of the United States Constitution, which was construed in the mentioned decisions, provides: "* * * nor shall private property be taken for public use, without just compensation."
But, contrary to what is also said in the majority opinion, that constitutional provision is not "practically identical" with the provision of the Louisiana Constitution on which plaintiffs rely for recovery in these cases. Our Constitution, in Section 2 of Article 1, recites that "* * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." *Page 1089 
And for many years our jurisprudence has been consistent in interpreting the latter provision as being applicable to claims for damages proximately and naturally resulting from negligent acts committed in connection with the conducting of public works. Green v. Board of Commissioners, 163 La. 117,111 So. 619; McGeehan v. Board of Levee Commissioners, 165 La. 241,115 So. 473; De Moss v. Police Jury of Bossier Parish, 167 La. 83,118 So. 700, 68 A.L.R. 336; Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169; Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425; Murff v. Louisiana Highway Commission, 2 Cir., 19 La.App. 847, 140 So. 863; Cope v. Louisiana State Livestock Sanitary Board, La.App., 2 Cir., 176 So. 657; and Pelt v. Louisiana State Livestock Sanitary Board, La.App., 1 Cir., 178 So. 644. (Emphasis ours.)
In the Green case the Levee Board was held responsible for damages caused by the negligent use of dynamite by which some tree trunks and branches were thrown upon the plaintiff's residence. In the De Moss case this court ruled that the lessee (not the owner) of a plantation was entitled to recover damages from the defendant Police Jury that were occasioned to his crop of corn and cotton by cattle entering the field as the result of tearing down his fence by certain contractors in the performance of road work. Therein, to support our conclusion, we commented: *Page 1090 
"Nearly every Constitution of this state has declared in positive and unequivocal language that private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid.
"Here the plaintiff's crop was damaged as the proximate and natural result of the widening of the road, for if the width of the road had not been extended, there would have been no necessity of tearing down the fence, and if the fence had not been torn down, the cattle would not have destroyed plaintiff's crop.
"To adopt the theory of the Court of Appeal, and deny plaintiff's right to recover for the damage to his crop, would, in the language of Justice Manning, `convert the constitutional protection into a false pretense and practically make it only a promise to the ear which it breaks to the hope.'" [167 La. 83,118 So. 702.]
In the Cope case plaintiff was allowed recovery for the negligent poisoning of his mule while being dipped pursuant to the requirements of the state's tick eradication law.
The decision in the Cope case, the opinion supporting which I wrote while a member of the Court of Appeal, was necessarily predicated on the above-mentioned jurisprudence, especially on the De Moss case. True, as the majority opinion herein points out in a footnote, Act No. 56 of 1918 provides that any person whose livestock *Page 1091 
is damaged or killed as the result of dipping for the eradication of the cattle tick, where such dipping is done under the supervision of the Livestock Sanitary Board, is entitled to recover from the parish in which the dipping takes place a reasonable compensation for the value of the animal destroyed. Further, it is true that under the provisions of Section 3 of Act No. 6 of 1930 the Livestock Sanitary Board is directed to compensate the owner of livestock for a loss of that nature. But it is also true that neither of those statutes provides a "* * * method of procedure and the effect of the judgments which may be rendered * * *", as is required by Section 35 of Article 3 of the Louisiana Constitution for the filing of suits against the state or its agencies, so that such owners can obtain the enforced collection of their claims. By those statutes, in other words, the owners are granted the right to be paid; but they are without the necessary remedy to compel the payment.
In the instant case plaintiffs' damages were the proximate and natural result of spraying operations conducted by the Louisiana Department of Agriculture under its program for the eradication of sweet potato weevils and pursuant to the provisions of Act No. 314 of 1926. And for those damages they are entitled to recover herein under the authority of Section 2 of Article 1 of the Louisiana Constitution as interpreted in the long line of *Page 1092 
jurisprudence above mentioned. But the majority opinion, together with the decision, overrules that jurisprudence and denies recovery.
Had this litigation presented that constitutional provision for our initial consideration, I should be disposed to agree with the interpretation given it in the majority opinion. Or if such an interpretation were supported by the jurisprudence of this state except for an isolated case therein, I should gladly join in the overruling of that case in the interest of uniformity. But I do not subscribe to the overruling of the discussed jurisprudence of this court and of our Courts of Appeal, which has been uniform and of long duration, when there appears no good reason for doing so. Such an act makes only for instability in the pronouncements of our judiciary.
I respectfully dissent.