72 So.2d 765 (1954)
BECK
v.
BOH BROS. CONST. CO. et al.
No. 20056.
Court of Appeal of Louisiana, Orleans.
May 24, 1954.
*766 Prowell, Viosca & Reuter, T. M. McBride, III, New Orleans, for plaintiff-appellant.
May & Carrere, New Orleans, for Boh Bros. Const. Co. and The Travelers Ins. Co., defendants-appellees.
George Piazza, New Orleans, Sp. counsel for Sewerage & Water Bd. of New Orleans, defendant-appellee.
Henry B. Curtis, City Atty., Alvin J. Liska, Asst. City Atty., New Orleans, for city of New Orleans, defendant-appellee.
JANVIER, Judge.
Plaintiff is the owner of a residence in New Orleans which he claims sustained damage as the result of vibrations resulting from the driving of piles and the operations of a concrete mixer used in the construction of a concrete drainage canal in Orleans Avenue, extending from North Jefferson Davis Parkway to Pumping Station No. 7 of the drainage system of the City of New Orleans. He alleges that the work was done by Boh Bros. Construction Company, a partnership composed of Arthur P. Boh and Henry Boh, under a contract between that partnership and Sewerage & Water Board of New Orleans; that before the work was commenced his house was "in very good condition, habitable and without defects," and that as a result of the driving of the piles and of the improper use of the concrete mixer, his home was damaged in the following particulars:
"a. Cracking of plaster in all six rooms of his home or house.
b. Splitting of mantle piece in dining room thereof.
c. Door frames and sills to split and separate from the connecting walls.
d. Cracking the flooring therein.
e. Damaging roof and causing same to leak.
f. Foundation to settle."
Plaintiff alleges that the City of New Orleans is the owner of the said Drainage Canal and that the Sewerage & Water Board is the custodian and operator of the canal and that both the City of New Orleans and the Sewerage & Water Board "owe a duty to your petitioner, a neighboring landowner, not to construct any works thereon that will cause injury to said neighboring landowner, or the property thereof." He further alleges that "notwithstanding this duty, the City of New Orleans and Sewerage & Water Board of New Orleans have, through Boh Bros. Construction Company, their independent contractor or agent, caused work to be placed on said Canal and damaged your petitioner's property as above set forth and in the amount hereinafter itemized."
Plaintiff also alleges that Fidelity and Deposit Company is the indemnity or liability insurer for the City of New Orleans and the Sewerage & Water Board of New Orleans, and that the Fidelity and Deposit Co. of Maryland is "indemnity insurer" of Boh Bros. Construction Company, and, without making any allegation as to why Travelers Insurance Company is brought into the case, avers that Travelers Insurance Company is a foreign corporation and is qualified to do and is doing business in the State of Louisiana. He then alleges that the damage sustained was caused by "the joint and singular negligence of the defendants above mentioned, its agents and employees, acting within the course of their employment or the scope of their agency, in the handling of machinery, digging the canal, handling of trucks and material used in the construction of the canal." He prays for solidary judgment in the sum of $1,125 against Boh Bros. Construction Company *767 and the individual members of the partnership, Travelers Insurance Company, the City of New Orleans, the Sewerage & Water Board of New Orleans and the Fidelity and Deposit Company of Maryland.
The City of New Orleans and the Sewerage & Water Board of New Orleans filed exceptions of no cause of action and no right of action. Boh Bros. Construction Company and the individual members and The Travelers Insurance Company and Fidelity and Deposit Company of Maryland filed answer admitting that Boh Bros. Construction Company had "carried out the plans and specifications on the instant job in a prudent and workmanlike fashion * * *." They denied any negligence on the part of the said construction company.
The exceptions of no right of action and no cause of action filed by the City of New Orleans and the Sewerage & Water Board were sustained, and there was judgment dismissing the suit as to these defendants.
After a trial there was judgment in favor of Boh Bros. Construction Company, The Travelers Insurance Company and the Fidelity and Deposit Company of Maryland and dismissing the suit as against those defendants. Plaintiff has appealed devolutively.
It is conceded that the Fidelity and Deposit Company of Maryland cannot be held, since that company was not a liability insurance carrier but had merely signed the performance bond in the contract. It further appears that The Travelers Insurance Company was liability insurance carrier for Boh Bros. Construction Company.
The exceptions of no right of action and no cause of action filed by the Sewerage & Water Board are based on several contentions: First, that that Board employed individual contractors to do the work and that consequently if there was any negligence of the contractors, the Sewerage & Water Board could not be held liable for the results of that negligence. The second contention is that the Sewerage & Water Board is a governmental agency and, insofar as its drainage operations are concerned, performs purely governmental functions as distinguished from proprietary functions and in the conduct of such governmental functions is exempt from tort liability.
There can be no question, we think, that the operations of the Sewerage & Water Board in the construction and maintenance of drainage canals are purely governmental and not in any sense proprietary.
This was so held in State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, 843, as follows:
"* * * the operation of the sewerage and water board controlling the drainage, sewerage, and water supply of New Orleans is not an ordinary governmental function of the municipal government * * *. The operation of this board is the performance of a governmental function delegated to it by the sovereign state."
Plaintiff contends that as a result of the provisions of section 2 of Article 1 of the Constitution of Louisiana of 1921, there can be liability in the Sewerage & Water Board merely as a result of the damage sustained and regardless of whether or not there was any negligence from which the damage resulted. The provision on which counsel rely reads as follows:
"* * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
Counsel for plaintiff call attention particularly to the words "or damaged" and they say that this provision of the Constitution makes it mandatory that the Board pay for such damage as is caused by its carrying out of functions however thoroughly governmental those functions may be and regardless of whether the damage is caused by negligence.
It is interesting to note that in Lutenbacher v. Mitchell-Borne Const. Co., 136 *768 La. 805, 67 So. 888, 19 A.L.R. 206, the Supreme Court considered this question of whether this same Sewerage & Water Board, which had made with an independent contractor a contract quite similar to the one under which this work was done, could be held liable for damage caused by the negligence of the independent contractor. The Supreme Court, as is expressed in Syllabus No. 1, said:
"The mere fact that a proprietor retains a general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulations of his contract, does not make him, the proprietor, responsible for the wrongs done to third persons in the prosecution of the work, as where a sewerage and water board, as a branch of a municipality, employs an engineer to superintend the general progress of the construction of the city's sewers and water mains, which have been contracted for, and to see that the work is done according to contract."
The averment that the constitutional provision which is relied on makes the Sewerage & Water Board liable whenever its operations cause damage is, we think, completely answered by the Supreme Court in Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666. There the Court very plainly held that the constitutional provision that private property should not be damaged for public purposes without just and adequate compensation had no application to a situation such as this where the damage does not result "from the intentional and purposeful act of the governmental authority." The Court held:
"The phrase `except for public purposes', as used in constitutional prohibition against taking or damaging of private property except for public purposes, refers exclusively to power of eminent domain, that is, the intentional or purposeful expropriation or appropriation of private property for public use or convenience." (Syllabus No. 4)
In connection with this argument we also notice that it is clearly stated in the petition that the claim is made for the cost of repairing the damage which is alleged to have been sustained and not for the diminution in the market value of the property which should be the basis of the claim under the constitutional provision relied on. Under this provision, where property is damaged, the compensation which is provided for is the depreciation in value and not the cost of making repairs. This was plainly held in Aleman v. Sewerage and Water Board, 196 La. 428, 199 So. 380. There the Court said:
"A claim for compensation under constitutional provision that private property may not be damaged for public purpose without adequate compensation differs from an action for tort in that negligence is not an element of recovery under constitutional provision and measure of damages is the diminution of the market value of the property while measure of damages for injury to property by tort is cost of restoration and value of lost use. * * *." (Syllabus No. 2)
Here the plaintiff did not sue for the diminution in value but for the cost of making repairs. We think that the exception of no cause of action was properly sustained.
The contentions of the City of New Orleans and of the plaintiff in connection with the exceptions of the City of New Orleans are very similar to those which we have just discussed, but plaintiff presents another argument in support of its contention that the City of New Orleans may be held liable. As we interpret this additional argument, it is that the City is the owner of the property (the street), on or in which the canal is located and that thus the City is a neighbor of the plaintiff and being a neighbor, cannot use its property in such way as to damage the property of another neighbor.
*769 In support of this argument counsel for plaintiff cite Hauck v. Brunet, La.App., 50 So.2d 495, 497. In that case defendant relied on LSA-Civil Code Article 668, which reads as follows:
"`Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.' * * *"
We said that that article had no application. And in answer to the contention there made that an owner is not liable for the "acts of an independent contractor," said:
"The best answer to this contention is that art. 667, R.C.C., emphatically enjoins a proprietor not to make any work on his estate which may be the cause of damage to his neighbor, and merely through the medium of an independent contractor, the proprietor cannot relieve himself from the nondelegable duty which he owes to his neighbor, and he is nonetheless liable for damages to his neighbor's property."
Surely the redactors of the Civil Code did not intend to apply this article to a municipality. In the first place, the City is not the "owner" of its streets in the same capacity as is the owner of private property. The citizens themselves are the owners of the street. In Town of Napoleonville v. Boudreaux, La.App., 142 So. 874, 875, the Court said:
"A street thus established by a municipal corporation becomes public property belonging to all in common. * * *"
"This street, when thus established, was segregated from the individual ownership, and became the property of all in common."
See, also, Irwin v. Great Southern Tel. Co., 37 La.Ann. 63.
We agree with counsel for the Sewerage & Water Board that it would be very drastic to extend the doctrine of the Hauck v. Brunet case so as to include the Sewerage & Water Board, or the City of New Orleans, or any other political subdivision as a "neighbor" within the contemplation of the quoted article of the Code. Should that be done municipalities would be placed in a very desperate situation since, whenever work is done by them, they would be overwhelmed with suits similar to that which we are now considering. See Orgeron v. Louisiana Power & Light Co., 19 La.App. 628, 140 So. 282.
Our conclusion is that the exception of the City of New Orleans was also properly maintained.
When we come to consider the charges of negligence which are hurled at the contractors, we find a voluminous record which is replete with testimony which cannot be reconciled.
However, we are very much impressed by the fact that, although in his petition plaintiff charged that the vibrations, which, according to him, caused the damage resulted from three operations of the contractors, each of which was improperly done, whereas, during the trial below and in argument before us, it was conceded that the only operation about which complaint was justified was the banging of a piece of railroad iron against the filler scoop of the concrete mixer. In other words it was conceded that neither the driving of the piles nor the dropping of the scoop to the grounds had caused any undue vibration.
The concrete mixer is a very large and heavy piece of machinery weighing, according to various estimates, from 18 to 20 tons. Its central portion is a large revolving drum shaped tank in which the concrete is mixed. On one end is a very large scoop which is attached to the mixer by what may be termed a hinge. The other end of this scoop is lowered to the ground and into it are put the various constituents which, when hardened, form concrete. When all the necessary constituents have been *770 placed in the receiving end of this scoop, that end is then raised so that the material may pass into the mixer and, by the revolving motion of the mixing drum, be thoroughly mixed. If any substantial portion of any of the constituents adheres to the scoop and does not pass into the mixer, the resulting concrete does not meet the specifications laid down by the testing laboratories.
In order to obviate this and to make certain that all of the material passes into the mixer the contractors had attached to the end of the scoop, by a short piece of cable, a piece of "railroad iron" which we understand means a piece of rail used by railroads. This piece of iron was three feet long, and when the scoop reached the almost vertical position it would bang against the scoop and dislodge any of the material which otherwise might have adhered to it.
This piece of iron was not provided as an original part of the mixer, and it is shown that, before the discovery of this method, the contractors, these and others, had found it necessary to station at the scoop a laborer with a large sledge hammer who would knock the sledge against the scoop and accomplish the result which is now accomplished by the banging of the railroad iron. It is that operation and only that against which complaint is now made.
Plaintiff himself said that he had actually seen the appearance of cracks in the walls of his house and had heard the banging of the iron against the scoop and had felt the vibrations thus caused and that all these occurrences had been simultaneous.
He produced as witnesses neighbors who said that they too had noticed the tremendous vibrations caused by the banging of the iron against the scoop. However, in his effort to prove this, plaintiff produced one witness who did not live in the neighborhood and who thought that he was called upon to prove that it was the driving of the piles which had caused the damage, and he testified that he was certain that it was the operation of the pile driver which was responsible for the damage. This is interesting in view of the fact that it was conceded that the driving of the piles had nothing to do with the damage.
As against this testimony of plaintiff and certain of his neighbors, defendants produced much testimony to the effect that the use of the railroad iron caused no undue vibration and that this method of dislodging material from the scoop was used satisfactorily and without damage by other contractors using identical mixers.
We think it well to mention that plaintiff's house does not front on the street on which the operations were being conducted but on a parallel street one block away and that the nearest portion of plaintiff's house is 120 feet from the canal.
We ourselves find it very difficult to believe that the banging of a three foot piece of railroad iron against the upper end of the upright could cause such damage as plaintiff complains of.
Plaintiff's house is approximately twenty-five years old, and it is shown that, because of what is known as the lowering of the water table, there has occurred in the past years a subsidence which has caused considerable damage to houses in that neighborhood. While there are in the record no pictures taken of plaintiff's house before the operations commenced, the contractors, in an effort to protect themselves against such claims, took numerous pictures of houses located on the street and these pictures show very extensive damage from cracks, etc., in these other houses.
Our conclusion is that the vibrations which were caused by the operation of the concrete mixer were very slight, and that they had no causal connection whatever with the damage which now exists in plaintiff's house.
This was the conclusion of the district judge and we find no manifest error in his conclusion.
The judgment appealed from is affirmed at the cost of plaintiff.
Affirmed.