173 So.2d 840 (1965)
Austin MILLER et al., Plaintiff and Appellant,
v.
COLONIAL PIPELINE COMPANY, Defendant and Appellee.
No. 1381.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1965.
Rehearing Denied April 29, 1965.
Writ Refused June 8, 1965.
*841 Grenese R. Jackson, Jennings, for plaintiff-appellant.
Sanders, Miller, Downing, Rubin & Kean, by R. Gordon Kean, Jr., Baton Rouge, John W. Hebert, Jennings, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This case, and Richard et al. v. Colonial Pipeline Company, 173 So.2d 846, in which a separate decision is being rendered by us this date, were consolidated for trial and argument on appeal. Both are suits for damages arising out of the construction of a pipeline by defendant, Colonial Pipeline Company, across rice farms. After defendant's exceptions of prescription and lack of indispensable parties plaintiff were disposed of, the district judge held on the merits that the rice fields had to be entirely releveled, but allowed only one-third of the total cost because the land had not been releveled in several years. Plaintiffs appealed, seeking increases in the awards. Defendant also appealed, seeking reversal of those parts of the judgments adverse to it.
In this court the plaintiffs filed motions to dismiss the appeals by defendant. We overruled these motions in a separate decision. See Austin Miller, et al. v. Colonial Pipeline Company, 173 So.2d 839.
*842 Although these two consolidated cases involve essentially the same evidence on the merits, the exceptions of prescription and lack of indispensable parties plaintiff are different in each case and hence must be discussed separately.
The present case was originally filed by Austin Miller, tenant of this 280 acre rice farm for the past 17 years under unrecorded leases. Miller alleged defendant destroyed his irrigation levees and "upset" the level of the land. He sought damages for the cost of releveling the entire acreage and for the value of 3 cows that died as a result of bogging down in the pipeline right of way. Defendant's exception, on the grounds that the owner of the land was an indispensable party plaintiff, was sustained. Then Mrs. Femie Romine Smith joined as a party plaintiff, alleging that she is the owner of an undivided one-half interest in the land and usufructuary of the other one-half (owned by her children). Colonial renewed its exception, contending that the owners of the entire fee title are indispensable parties. The district judge correctly held that the tenant is an improper party plaintiff as to the releveling costs. He also correctly overruled the renewed exception as to Mrs. Smith, giving the following reasons:
"The Exception of Improper Parties Plaintiff insofar as it relates to Mrs. Smith is overruled for the reason that the usufructuary is charged with the responsibility of maintaining the land in its original condition. Should the usufructuary fail to take action to recover for and repair the damages, then the naked owners would have a cause of action against the usufructuary for damages (LSA-R.C.C. 570, 573) or could sue for the termination of the usufructuary, LSA-R.C.C. 621."
The defendant argues on appeal that the cost of releveling the rice field represents a diminution in the market value of the land, resulting from "* * * altering the substance of the thing.", within the meaning of LSA-C.C. Article 533, and hence that the naked owners are indispensable parties. Defendant cites King v. Buffington, 240 La. 955, 126 So.2d 326, holding that bonus payments, rentals and royalties under an oil, gas and mineral lease, executed after the usufruct began, must go to the naked owner because, among other reasons, any production under the lease would "altering the substance of the thing."
In our view, the leveling of the land was simply part of the cultivation thereof for the production of rice, a right expressly given to the usufructuary under LSA-C.C. Article 551. The damage done here was to the usufructuary in the exercise of this right. There was no alteration or depletion of the substance of the land, such that the naked owners will be permanently deprived of any part thereof or right thereto. This case is in no sense like Tennessee Gas Transmission Company v. Derouen, 239 La. 467, 118 So.2d 889 (1960) where the naked owners were held to be necessary parties to a suit for the expropriation of a pipeline easement.
Next we will discuss defendant's plea of prescription. The statutory provisions to be considered are:
The general expropriation statute provides in LSA-R.S. 19:2.1(B) as follows:
"All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation. Added Acts 1950, No. 238, § 1."
The Civil Code Ancillaries provide in LSA-R.S. 9:5624 as follows:
"When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall *843 begin to run when the damages are sustained. Added Acts 1950, No. 421, § 1."
LSA-R.S. 45:254 provides:
"All persons included in the definition of common carrier pipe lines as set forth in R.S. 45:251 have the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common carrier pipe line business * *."
The general facts relevant to the plea of prescription are as follows: Colonial's easement for the pipeline was not acquired in an expropriation proceeding, but, instead, was acquired by conventional agreement from the owners of the land, Mrs. Smith and her children. (The written agreement is not in evidence, but plaintiffs do not base their claims for damages on breach of contract.) In the latter part of 1962, and early 1963, Colonial constructed this 36 inch pipeline, for use in its business as a common carrier for the transportation of refined petroleum products from Texas to the New York State area. The facts show that both the tenant's claim for his cows, and the owner's claim for releveling, were filed more than one year, but less than two years, from the time the damages were sustained.
Plaintiffs contend the prescriptive period as to both claims is two years. They argue that either LSA-R.S. 19:2.1(B) or LSA-R.S. 9:5624 applies, or perhaps both statutes apply. Defendant contends that since there was no expropriation or appropriation, but, instead, a conventional right of way agreement, neither of these statutes apply. Defendant argues that the rights and duties of the parties must be determined by the agreement between them and the general laws of Louisiana relating to torts and/or contracts.
The purpose of LSA-R.S. 19:2.1 (B), and its source statutes, is to provide a prescriptive period of two years on claims for property taken or damaged by expropriation, where otherwise there would be none. Where the acts of the expropriating authority are lawful and not tortious or in violation of contract, then there might be no prescriptive period applicable in the absence of this statute.
The same problem arose as regards the lawful appropriation of private property for public use. In A. K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765 (1959) the defendant Levee Board appropriated certain land to erect a levee, as authorized by the Louisiana Constitution. Suit was filed about 10 years later for the value of the property taken. In overruling the exception of two years prescription, filed by the Levee Board, the court held as follows:
"In support of the plea of two-year prescription in the lower court, defendant relied on the provisions of R.S. 19:2.1, subd. B, Article 2630 of the Civil Code, and R.S. 9:5624; but, apparently conceding the correctness of the trial judge's ruling that R.S. 19:2.1, subd. B and Article 2630, R.C.C., are applicable only to actions for damages and claims resulting from a legal expropriation of land, defendant, in this court, relies solely on R.S. 9:5624. This section is equally inapposite to the case at bar, since, by its very language, it applies only `when private property is damaged for public purposes,' but not to actions for the recovery of the value of property taken for public purposes."
Under the holding in the Roy case, quoted above, it is clear that LSA-R.S. 19:2.1(B) has no application here, because there was no expropriation proceedings. But the applicability of LSA-R.S. 9:5624 is a much more difficult question. The problem is noted by the author of "Louisiana Legislation of 1950", 11 La.L.Rev. at pages 36-37 as follows:
"Prescription. Act 421 (LSA-R.S. 9:5624) establishes a prescriptive period *844 of two years for `any and all' actions for damages when private property is injured for public purposes. This prescriptive period begins to run at the time the damages are sustained. From the wording of this act it would seem that it was enacted for the express purpose of clarifying the prescription aspects of Section 2.1 of Title 19, relating to expropriation of private property for public use. Previously, in Section 5603 of Title 9, one year had been designated as the prescriptive period for damages to person or property by reason of the grading of any public way by any municipality. If Act 421 is limited in its applicability to the question of expropriation it would have no effect upon the one year prescriptive period in Section 5603. However, if the courts hold that it is general in application a question of interpretation would arise as to whether or not Section 5603 is superseded by Act 421."
LSA-R.S. 19:2.1(B), amending the general expropriation statute by providing a two year prescriptive period, and LSA-R.S. 9:5624, found in the Civil CodeAncillaries, were adopted at the same session of the legislature in 1950. Hence it might well be argued, as the author of the above quoted Law Review article suggests, that the amendment to the Civil Code-Ancillaries had no purpose except to clarify the prescriptive aspects of the general expropriation statute. However, we are expressly enjoined by the provisions of LSA-R.S. 1:12 that "The classification and organization of the sections of the Revised Statutes is made for the purpose of convenience, reference, and orderly arrangement, and no implication or presumption of a legislative construction shall be drawn therefrom."
Counsel for Colonial suggests that LSA-R.S. 9:5624 has the sole purpose of providing a prescriptive period applicable to "appropriations", because prior to 1950 there were none. We think clearly it does apply to lawful appropriations. Our Supreme Court implied this in the Roy case, supra. But we see no reason why it should not also apply to situations involving conventional agreements. The language of the statute itself does not restrict its application to appropriations. The jurisprudence is established that all statutory provisions should be given effect, whenever they can be given a reasonable interpretation, Johnson v. Sewage District No. 2 of Parish of Caddo, 239 La. 840, 120 So.2d 262 (1960). The statute here clearly states that where "private property is damaged for public purposes", the prescriptive period is two years. Private property may be damaged for public purposes in the course of work done under a conventional agreement as well as work done pursuant to an expropriation or appropriation. The crucial test is whether it was for a public purpose.
We think that construed in the light of our jurisprudence establishing what is, and is not, a "public purpose", LSA-R.S. 9:5624 can be given a reasonable interpretation. Most applicable here is the leading case of Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666 (1948). There, employees of the Louisiana Department of Agriculture were spraying plaintiff's sweet potatoes for weevils, when they negligently burned the building and destroyed the potatoes. Plaintiff sued for the value of his potatoes, claiming they were "taken or damaged" for public purposes within the meaning of LSA-Constitution Article I, Section 2; Article 3, Section 35. At issue was plaintiff's right to sue the state without special consent of the legislature. In holding the potatoes were not taken or damaged for public purposes the court said:
"This argument is not sound because it fails to reckon a distinction between the destruction and damaging of private property by agents of the State while engaged merely in the performance of a governmental function and the deliberate taking or necessary damaging of property for the public use and benefit. In the first instance, the *845 destruction or damage occurs not for a public purpose but by reason of the negligence of the state officers or agents. In the latter, the property is taken or damaged under the power of eminent domain, it is an appropriation for public purposes for which adequate compensation is guaranteed to the owner by Section 2 of Article I of the Constitution."
* * * * * *
"* * * we view the constitutional provision as applicable only to cases where the taking or damaging of the private property is intentional or occurs as a necessary consequence of the public undertaking. We say `necessary consequence' because we envision cases where damage might be inflicted upon private property as a necessary result of the undertaking although the doing of the damage is unintentional and may not be foreseeable by the governmental agency. In such matters, the damage is on a parity with the intentional taking or damaging under the power of eminent domain. On the other hand, damage to private property which occurs solely as a result of negligence and not as a necessary consequence of the public work, fits nowhere within the realm of eminent domain and the courts are without jurisdiction to entertain a suit of this sort against the sovereign."
Under this interpretation of the term "public purposes" in LSA-R.S. 9:5624 it is clear that Mrs. Smith's land was damaged for a public purpose. The irrigation levees were destroyed, and the level of the rice fields upset, as an intentional and necessary consequence of the construction of the pipe line.
It is our conclusion that Mrs. Smith's private property was damaged for public purposes within the meaning of LSA-R.S. 9:5624 and hence the two year prescriptive period set forth therein is applicable. Defendant's plea of prescription as to Mrs. Smith's claim was properly overruled.
As to the claim by Miller, the tenant, for loss of his cows, he testified that in January or February of 1963, through negligence of Colonial's employees, the cows were allowed to escape through a fence and become bogged down in the right of way. More than a year elapsed before Miller filed this suit on March 16, 1964. The district judge held this is a claim ex delicto and prescribed in one year under LSA-C.C. Article 3536. Mr. Miller contends the two year prescription of LSA-R.S. 9:5624 is applicable here.
Under the construction which we have given to LSA-R.S. 9:5624 it is clear that Mr. Miller's cows were not damaged for a public purpose. Their destruction was not intentional nor did it occur as a necessary consequence of the construction of the pipeline. It occurred solely as a result of the negligent acts of defendant's employees. The exception of prescription was properly sustained as to Mr. Miller's claim for loss of his cows.
Now turning to the merits, we see no need to discuss the evidence. Suffice it to say that the record amply supports the facts found by the district judge in his well considered written opinion. Briefly stated, these facts are that it will be necessary to relevel about 174 acres of the Smith property at a cost of $20 per acre, or a total of $3,480. However, this land had not been releveled in approximately 10 years and the evidence shows good farming practice requires releveling every 6 to 10 years. We adopt as our own the trial court's conclusion on the merits as follows:
"It is this Court's opinion that Mrs. Smith's land was due for a land leveling in the not too distant future when Colonial crossed her property; that it is, therefore, not proper to assess Colonial with the full cost of this land *846 leveling simply because their crossing hastened the need for the land leveling. Applying this reasoning to the evidence in this case, it is this Court's opinion that Mrs. Smith is entitled to recover the sum of $1,160.00."
We do not find our holding here on the merits in conflict with Texas Gas Transmission Corporation vs. Fuselier, 133 So. 2d 828 or Texas Gas Transmission Corporation v. Klumpp, 137 So.2d 123 where recovery was allowed for the full cost of releveling. In those cases no argument was made, nor evidence produced to show, that a reduction of the cost of releveling should be allowed by reason of the lapse of time since the rice field had previously been leveled.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.