This is a suit by Max Thieme, the record owner of a lot in the town of Winnfield, Louisiana, fronting on Lafayette Street 110 feet by 110 feet deep, against the Louisiana Highway Commission for alleged damage to said lot and improvements thereon caused by the construction and maintenance of an overpass and approaches over the C.R.I. P. Railroad tracks which are on Front Street and which cross Lafayette Street near the property of plaintiff.
Plaintiff alleged that before the construction of the overpass his property and improvements thereon were worth $2,000.
"That as the result of the construction of said project, your petitioner's property is entirely cut off from ingress and egress via Front Street and is now entirely isolated from said Front Street, which is now bridged and under said overpass.
"That the grade of the Street has been raised from 1 1/2 feet to 2 1/2 feet in front of his property, and the sides and railing of the bridge and overpass cut off from view and make a blind approach to anyone backing out of petitioner's premises to all traffic and pedestrians, and make entrance into the street from petitioner's property, either in person or by vehicle, extremely dangerous, and also operate as a great hazard and menace to life and property, and particularly to children. That also, the raising of the street, which was accomplished by tearing up all paving and sidewalks in front of petitioner's property and the filling in of the street and sidewalk area and then repaving, has destroyed the beauty of the petitioner's lot and the contour thereof, and has made the property unsightly and without the neat appearance it had before this project was built and completed and is uninviting.
"Petitioner's lot was amply large for two dwelling houses until this bridge and overpass were built, but now, due to conditions set forth in the preceding paragraph, the west half of the lot was rendered thereby unfit for another dwelling and is useful only *Page 168 
for the yard space it affords for the residence now situated thereon. The view being cut off by the construction aforesaid and described and the hazardous approach and ingress and egress on and off same would render it unfit and undesirable for a building site and for residential purposes.
"That petitioner has lost the full amount of the pavement and sidewalks torn up and destroyed built and laid in front of his premises at his expense, say the sum of $500.00.
"That in filling in the street the said street was narrowed and is not the same width that it was before said project was built and completed, thus adding this item of depreciation to the value of his property.
"That the sides of said bridge and overpass are left open underneath and now serve as a place to harbor transients and undesirables and exist as a source of great annoyance, danger, and are a constant menace to everyone residing in the vicinity of said bridge and overpass.
"That the construction of said project has rendered petitioner's property undesirable and inconvenient for both residential and commercial purposes and that prior to the construction thereof, petitioner's property was conveniently located and very desirable for both commercial and residential purposes and well worth the sum of $2000.00, as before alleged. That now, it has depreciated in value and is not worth the sum of $500.00 for the causes and reasons heretofore alleged. That at the most it is now second class rental property and situated in a hazardous situation, with the beauty and desirability of the property greatly decreased by reason of the causes and reasons heretofore set forth. That petitioner itemizes his damages, set forth in detail in the foregoing paragraphs, as follows:
"(a) Loss of pavement and sidewalk, alleged in Paragraph 11 of petition, the sum of $500.00;
"(b) Items of damage set forth in paragraphs 7, 8, 9, 10 and 12 of petition, the sum of $500.00.
"(c) Item of damages set forth in Paragraph 13 of petition, the sum of $500.00; thus making the total damages of $1500.00, together with 5% interest thereon from date of judicial demand until paid and for all costs of this suit."
Defendant admits the construction of the overpass but denies it owes plaintiff any amount in damages or compensation.
Defendant filed below exceptions of no cause and no right of action which were overruled. The lower court rejected plaintiff's demands for the loss of pavement and sidewalk, as set forth in Paragraph 11 of the petition, and for damages for annoyance and danger caused by transients and undesirable persons using the under part of said overpass as a harbor or place of safety from the weather. It allowed damages in the sum of $500 for the reduction of value of plaintiff's property caused by the erection and maintenance of the overpass. Defendant is prosecuting this appeal.
Plaintiff has not answered the appeal; therefore, the only question for us to determine is that of reduction of value of plaintiff's property caused by the erection and maintenance of the overpass. The exceptions of no cause and no right of action are seriously urged here by defendant. Since it is our conclusion that plaintiff's property has not been damaged by the overpass and there has been no reduction in the value of his property, caused by the overpass being built, it is unnecessary to pass upon the exceptions in this case. There are three companion cases to this one before us in which it will likely become necessary to pass on the questions of law raised by the exceptions.
Lafayette Street runs east and west. Plaintiff's property is located on the south side of the street east of the overpass. A frame residence is located on the east half of plaintiff's property and the west half, which is nearer the overpass, is vacant.
The street grade in front of the east half of the lot was not changed. Beginning about midway of the lot the incline toward the overpass begins, being gradual and at the highest point in front of plaintiff's property, which is the northwest corner, is approximately 12 or 14 inches higher than was the old pavement. Between this northwest corner and the overpass there is the highway leading into the property of a Mr. Carter. Plaintiff's northwest corner is approximately five feet east of this highway and there are several feet of distance between the west side of the driveway and the east end of the overpass. Plaintiff's lot slopes from south to north, or toward the street, and is higher than the street. There is no claim for excess water draining onto the lot and there could not be for no water drains from the street onto plaintiff's lot. The photographs in the record clearly show *Page 169 
the lot owned by plaintiff to be higher than the street or sidewalk adjacent to it.
Plaintiff complains of the fast speeding cars and trucks which come over the overpass and the danger caused to anyone backing a car out of his premises and that the sides and railing on the overpass obstruct the view of these fast approaching cars. It is needless to say that defendant is not responsible for the speeding of the vehicles using the overpass. That is regulated or can be regulated by law and the proper enforcement of it by the police officers of the town. The obstruction, if any, is slight and does not in any way reduce the value of plaintiff's property. The overpass is too far away and the evidence shows that plaintiff's residence on the lot can be seen from the center of the overpass at its highest point and the pylon on each side of the east end of the overpass could only obstruct the view of a driver of a car coming over the overpass for a small fraction of a second. There is no danger of being struck by an on-coming car from the overpass to one backing out of the plaintiff's property unless the on-coming car was speeding. That being true, the Highway Commission cannot be held liable for the reckless acts of a law violator. There is nothing dangerous in the manner in which the overpass was constructed or maintained and it was certainly an improvement in appearance and otherwise over the old overpass which was there before this one was built, as is shown by the photographs in the record.
Plaintiff further complains that in walking west over the overpass, it is necessary to climb seven, eight or ten steps, the exact number is not shown, in order to reach the sidewalk along the side of the overpass and that this fact makes his property undesirable as rent property. On each side of the overpass walks are provided for pedestrians and these walks are connected with the sidewalk on each side of the street by steps which are necessary to climb in order to reach the sidewalk on the overpass. At most, this causes only a slight inconvenience and we feel sure it does not in any way affect the value of plaintiff's property. His tenant who had lived there in the house on the lot involved here before the overpass was constructed and is still living there and paying the same monthly rental, although a witness, made no complaint about this extra exercise.
Plaintiff also complains that there is no access from his property to Front Street, which is under the overpass, and when before the overpass was erected he could enter Front Street by going west on Lafayette Street approximately one-half block and now it is necessary to travel two blocks to reach Front Street from his property.
The right of ingress and egress to all streets and alleys adjacent to his property still exists as it did before the overpass was built and the mere fact that he is forced to travel one or two blocks farther to enter a given street than he did before the erection of the overpass is not an element of damage which could or did decrease the value of his property. Slight inconveniences caused to individuals of the public by improvements made by the State or its duly constituted wards, boards or commissioners for the benefit and convenience of the public in general are not compensable unless it can be positively shown that the property or individual has suffered a depreciation in value caused by the improvement and that the damage is to him and not to all others in the same locality. Plaintiff has failed to make this showing by a preponderance of the testimony.
Every property owner and all who lived on Lafayette Street east of the overpass is forced to travel the same extra distance as those living on plaintiff's lot in order to reach Front Street. The witnesses who testified to the depreciation of plaintiff's property undoubtedly based their opinion upon the annoyance by tramps, danger from speeding cars and the other slight inconveniences which we have spoken of and which we do not think are elements of damage to be considered.
We feel convinced that plaintiff's property is worth as much today as it was before the overpass was erected and the lower court has erred in awarding him judgment in any amount. The judgment is therefore reversed and the demands of plaintiff are now rejected at his costs. *Page 170