SAVOY, Judge.
Plaintiff filed this expropriation suit against defendant and acquired a certain portion of his residence situated in the City of Lake Charles, Louisiana. The land was acquired for the purpose of the construction of Lake Charles Interstate Highway By-Pass, on the route of Interstate No. 210.
The expropriation order was dated April 24, 1961, and the case was tried on June 7, 8 and 9, 1965.
Plaintiff deposited in the Registry of the court the sum of $4,085.00; $1,685.00 being for the value of the land taken; and $2,-400.00 as severance damages. After a lengthy trial on the merits, the trial judge awarded $1,685.00 for the land taken and increased the award for severance damages by $9,716.25, making a total award to defendant in the sum of $13,801.25. From this judgment plaintiff has appealed.
LSA-R.S. 48:453 provides:
“The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
“Damage to the remainder of the property is determined as of the date of the trial.
“In either case the defendant has the burden of proving his claim.”
Plaintiff filed an exception of no cause or right of action with respect to that portion of defendant’s demand for severance damages resulting from construction activities. This exception was overruled, and will be discussed in more detail in this opinion.
Without detailing the evidence in connection with the testimony of the experts as to the value of the land expropriated, we are of the opinion that the award of $1,685.00 made by the trial judge is reasonable and fair under all of the circumstances of the case. Neither counsel for the parties has advanced any serious argument as to this portion of the award.
The most serious dispute between the parties arises in connection with the severance damages suffered by defendant as a result of the taking. The severance damages may be divided into two categories:' (1) severance damages to the remainder of the property (2) severance damages because of structural ■ damage to the residence of defendant resulting from the excavation and other related work in connection with the construction, of the highway in the vicinity of defendant’s residence.
The record reveals that the residence of defendant is located in a developed residential section of Lake Charles and is in a wooded area. Defendant constructed a residence on a lot having a frontage of 100 feet by a depth of 175 feet. Defendant erected full length windows across the rear of the residence to take advantage of the scenery. The residence is of brick construction with concrete slab. The photographs introduced in evidence reflect the residence and the premises are very attractive.' All of the experts testified that the highest and best use of the property is for residential purposes. After hearing the testimony of four real estate experts, the court placed a value on the improvements of $19,000.00. The court found the value of the land prior to the taking to be $7,000.00, and as stated before, fixed the value of the land at $1,685.00, leaving a value for the remainder of the land at $5,315.00. The court then placed a value of $24,315.00 on the land and improvements after the taking. The district judge found that the severance damages to the remainder of the property amounted *348 to 25% or $6,078.75. In arriving at this amount he considered the proximity of the defendant’s residence to the Interstate ByPass, the existing dump caused by the building of the highway and other related factors. After examining the expert testimony in this case and the reasoning of the district judge, we are of the opinion that his award is reasonable.
 The most serious dispute between the parties involves $6,037.50 severance damages awarded to defendant by the district judge for structural defects. Plaintiff directed its exception of no right and no cause of action toward this portion of the award. Counsel for plaintiff take the position that these damages are ex-delicto, and plaintiff is immune from suits for such damages unless the State waives its immunity and authorizes such proceedings, and that such damages are not recoverable under the provisions of Article I, Section 2 of the Louisiana Constitution of 1921. Plaintiff also cites as its authority for denying damages the cases of Kendall v. State, Through Department of Highways (La.App., 2 Cir., 1964), 168 So.2d 840; and Klein v. Department of Highways, (La.App., 4 Cir., 1965), 175 So.2d 454. Counsel for defendant contends that the Kendall case, supra, supports his position. In his reasons for overruling the exceptions and allowing damages for structural defects, the district judge made the following statements, which we adopt as our own, to-wit: “ * * * On this phase of the case, counsel for both parties express their views about the applicability of the decisions in Kendall v. State of Louisiana, through the Department of Highways, 168 So.2d 840, and in Klein v. Department of Highways, 175 So.2d 454. In the Kendall case, a property owner not involved in any expropriation proceeding, was allowed recovery for damage to her artificial lake resulting from construction of a highway which passed about 400 yards distant from her property. The court held that the plaintiff was entitled to recover damages to private property as the result of an undertaking by a governmental agency which was for a public purpose or benefit, and that the provisions of Article I, Section 2 of the Louisiana Constitution were self-operating and created such a cause of action, regardless of whether her demand may have been made on the basis of Article 667 of the Revised Civil Code. The Kendall decision recognized the general rule for the proper method of computing damages as being the depreciation in value and not the cost of making repairs, but it held that the damage could well be determined by the cost of restoration of the lake, due to its unique character and the lack of applicable sales that might show diminution in market value. In the Klein case, a claim was involved for damages due to the collapse of a roof in the vicinity of driving piles, alleged to result from vibrations of the pile driving by a subcontractor. The court held that the plaintiff was not entitled to recover as a 'neighbor’ under the provisions of Civil Code Article 667, and dismissed the suit on a motion for summary judgment in further holding that recovery was not permissible under Ai'ticle I, Section 2 of the Constitution, as the latter provides for just and adequate compensation when property is taken or damaged under the power of eminent domain. The writer of the opinion in the Klein case was unable to reconcile the decision in the Kendall case with that of Angelle v. State, 212 La. 1069, 34 So.2d 321 [2 A.L.R.2d 666], and felt bound by the provisions of that decision rather than by the decision in the Kendall case.
“In the case now before the court, the defendant’s property has been expropriated under the provisions of R.S. 48:441-460, which provides for just and adequate compensation for the parcel taken and for damages to the remainder of his property, with ample constitutional basis for the statutory provisions referred to. This places the defendant in the present case in a situation entirely different from the *349 plaintiffs in the Klein and Kendall cases-cited supra. * * * ”
As to whether structural defects had occurred to defendant’s residence, the following experts testified: Mr. Ray Burgess, a civil engineer and an expert on foundations; Mr. Albert J. Carter, architectural engineer; Mr. Charles W. Parish, consulting engineer, instructural and mechanical failures, and in the effect of vibrations; and Mr. John Poche, Jr., as an engineer and builder. As to the amount of damages to the residence, Mr. John G. Lutgring qualified as an expert in building and construction.
As to whether structural defects were occasioned by the building of the By-Pass, the experts gave detailed evidence. After hearing all of the experts on this phase of the case, the court made the following findings of fact:
“1. That the McGill improvements were not constructed in 1957 with the unlevel foundations now existing therein;
“2. That periods of drought or normal loss of moisture in the soil beneath the foundation could not have caused the misalignment thereof;
"3. That clearing and grubbing operations in the area, and removal of several large trees from the particular parcel taken from the defendant contributed to the appearance of certain cracks in the walls of the residence;
“4. That the construction of the ditch on the remaining North boundary of defendant’s property resulted in an abnormal loss of moisture of the soil under the foundation of the house;
“5. That the construction of the highway fill and the building of the embankment dump for the highway and the proposed overpass caused the misalignment in the foundations of the McGill residence, resulting in serious structural damage requiring correction and related repairs to components of the residence.”
After a careful review of the record, we are in complete agreement with the trial judge that the damages sustained by defendant resulted from the expropriation of a portion of defendant’s property and the subsequent construction adjacent to the remaining portion thereof. -
Based upon the testimony of Mr. Lut-gring, the court found that it would cost $6,037.50 to make correction and repairs. This testimony was not contradicted. Mr. Lutgring was very conservative in his estimates, and we are of the opinion that the above sum is reasonable for corrective work on the residence of defendant.
For the reasons assigned the judgment of the district court is affirmed. Appellant to pay such costs as it is required by law to pay.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.