LOTTINGER, Judge.
This is a suit for damages to property filed by Mabel M. Reymond, as petitioner, against the State of Louisiana, Department of Highways and Farnsworth Division, Fruin-Colnon Contracting Co. as defendants. Brought into this suit as a third party defendant was Reymond Concrete Pile Division of Reymond International, Inc. After trial on the merits, the Lower Court awarded judgment in favor of petitioner and against the Department of Highways in the sum of $8,750.00, with legal interest thereon at the rate of five per cent per an-num from date of demand until paid. Judgment was also rendered in favor of defendant Fruin-Colnon Contracting Co. as well as in favor of third party defendant Reymond International, Inc., dismissing the suit as to each of said defendants. From this judgment the Department of Highways, together with Fruin-Colnon Contracting, have both filed appeals to this Court, and Fruin-Colnon Contracting Co. has further filed an appeal from the judgment of the Lower Court dismissing its third party demand against Reymond International, Inc.
The record discloses that petitioner purchased her residence located at 3464 South Eugene Street in Baton Rouge, Louisiana, during October of 1956 for the consideration of $9,975.00. Her residence was a modest five room dwelling of frame construction. It was some fifteen to eighteen years old at the time she purchased it, and the dwelling was situated on a lot of approximately fifty feet front on South Eugene Street. Prior to the construction of the Interstate Highway, the house was located in a well established subdivision of comparable, or better class residences.
Some time during 1962, construction of Interstate Highway commenced. This *490 highway did not take any of Mrs. Rey-mond’s property, however it did take all the residential property across South Eugene Street from her house. Furthermore, the highway was constructed at such an angle that South Eugene Street had to be re-routed and, while Mrs. Reymond’s property still faced Eugene Street it has been separated and isolated from the remaining portion of the subdivision and neighborhood. There are only three other residences on Eugene Street that share a fate similar to that of Mrs. Reymond.
During most of the construction activities in 1963, heavy equipment was being operated in the vicinity of Mrs. Reymond’s residence and pile driving operations were being conducted in the summer of the same year. Petitioner claims damages against the defendants for diminution in the value of her property as a consequence and denial of accessability to and from her property, as well as structural damages to her residence caused by the Department of Highways and its contractors, during the course of their pile driving operations and other activities on the adjacent lands. Her demands are based upon the provisions of Article I, Section 2 of the Louisiana Constitution which provides:
“No person shall be deprived of life, lib erty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” (italics supplied.)
With regard to compensation for dam ages claimed as a result of the depreciatior, in value of the property of petitioner as a consequence of the location of Interstate, the Lower Court in a well considered opinion said:
“Logically, the Courts of this State have not allowed recovery for consequential damages in cases of an expropriation character where there is no physical taking or physical invasion of the property, except in rare instances. As stated by counsel for the State: * * allowing recovery for this type of claim would open a Pandora’s box to a virtual multitude of claims from' people living near any new highway.’ Faced with the payment of claims of this magnitude, new highway development would become economically impossible. Improvement of our system of highways means continual changes and effect on existing sectors of the urban areas of our country. This improvement, of necessity, will not only have a general, but an individual effect on the lives and property of each of the citizens so affected. As such, they share the risk of the best and worst aspects of the improvement.
Accordingly, the Courts have developed a guide for claims for consequential damages where there is no actual taking of the property by expropriation.
As stated in an early Louisiana case of this type, Jarnagin v. Louisiana Highway Commission [La.App.], 5 So.2d 660:
‘We are of the opinion that a physical invasion of real property or of a real right is not indispensable to the infliction of damages within the meaning of the constitutional guaranty under discussion. If the public improvement, as a consequential effect, has caused special damage to the property, such as is not sustained by the public or the neighborhood generally, whether it abuts the improvement or not, an action lies to recover. * * *’
‘But the damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner’s personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the Constitution, but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use. To warrant a recovery the damage must *491 be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the neighborhood, the injury is not within the provision of the Constitution.’
Thus the rule established permits recovery in these cases only where there is substantial proof of special damages shown. It is interesting to note that the Jarnagin case, supra, is a companion case to two other cases evolving out of the construction of an overpass in Winnfield during 1938, and which clearly illustrate the application of the above described rule. These are Thieme v. Louisiana Highway Commission [La.App.], 5 So.2d 167, and Carter v. Louisiana Highway Commission [La.App.], 6 So.2d 159. In Jarnagin, supra, the Court said in reviewing the facts and denying recovery:
Tn the present case, granting that plaintiff’s property has suffered some damage by way of inconvenience from the erection of the overpass, such damage is not special or exclusive as to her property. All other property owners on Front Street south of hers, and also owners for one block east and several blocks south, who formerly reached Lafayette Street via Front Street, are likewise affected. The damage or injury inflicted, whether such in legal contemplation or not, is more or less common to all owners, in that neighborhood. * * *’
In Thieme, supra, recovery was also denied where the plaintiff complained there was no access from his property to Front Street and he had to travel two extra blocks after the construction of the overpass. The Court observed:
‘The right of ingress and egress to all streets and alleys adjacent to his property still exists as it did before the overpass was built and the mere fact that he is forced to travel one or two blocks farther to enter a given street than he did before the erection of the overpass is not an element of damage which could or did decrease the value of his property. Slight inconveniences caused to individuals of the public by improvements made by the State or its duly constituted wards, boards of commissioners for the benefit and convenience of the public in general are not compensable unless it can be positively shown that the property or individual has suffered a depreciation in value caused by the improvement and that the damage is to him and not to all others in the same locality.’
However, where special damages were found, as in the Carter case, the same Court was not reluctant in awarding damages. There the Court stated:
‘Unquestionably with reference to the merits of the case, the house and lot belonging to plaintiff were specially and materially damaged by the construction of the overpass, causing a substantial reduction in the sale thereof. This is conceded by the experts testifying for defendant, they differing with plaintiff’s witnesses only as to the extent of the depreciation.’
Evidence of continued support of a rule permitting consequential damages is found in the recent case of State of Louisiana through the Department of Highways v. Terry [La.App.], 194 So.2d [144] 145. The First Circuit took the opportunity to apply the rule as enunciated in the Jarna-gin case, supra, in its disposition of the issue before it. In Terry, the landowner claimed damages to his property as a result of the construction of the Interstate because it forced him to travel three and a half miles further to the nearest urban center. In granting damages the Court commented:
‘Defendant bears the burden, therefore, of proving not only that his property was damaged by the public project, but that the damages suffered by his property were special and not such as were suffered by the public generally or by properties similarly situated.
*492 ‘In applying this principle of law in the past, the courts of this state have awarded damages in such cases. In the case of Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218 (1958), in which access to plaintiff’s property was limited by an underpass in front of it, an award was made because of the peculiar location of the subject property with reference to the underpass. * * *
‘In this case, the defendant owns the only tract of land situated west of the Interstate Highway 55 which is serviced by the Greenlaw road. There are no other persons in the neighborhood who are forced to use the circuitous route defendant must use in order to reach the nearest urban center. There is no testimony in the record to indicate that any other landowners in the vicinity have suffered a diminution in the value of their property by virtue of the difficulty of access thereto.
‘Before the location of the highway, the Terry property had the most advantageous location in the vicinity. After the taking, it is located equidistant from the two nearest interchanges, and has the least advantageous location insofar as access is concerned. We find that because of the peculiar circumstances surrounding the location of Mr. Terry’s property, the diminution in value which was suffered by his property as a result of loss of access is compensable.’
From these cases it appears that while consequential damages in expropriation cases are not usually granted to the property owners for discomfort, disturbances and injury to business, where it can be shown that there is special damage' to property which is not generally shared by the neighborhood, awards for consequential damages have been sanctioned by our courts. Central Louisiana Electric Company v. Harang [La.App.], 131 So. [2d] 398; State of Louisiana through the Department of Highways v. Ben Levy, Jr. [242 La. 259], 136 So.2d 35; State of Louisiana through the Department of Highways v. Terry [La.App.], 194 So.2d 144, 145.
Turning to the situation at hand, it is obvious that the property of Mrs. Reymond has not only been isolated by the construction of the raised portion of the Interstate, but a peculiar problem has been presented relative to the property’s accessibility. It is apparent from a physical inspection of the location, as well as from the exhibits in the record, that four residences (including that of Mrs. Reymond) have been completely severed from the balance of the subdivision. Further, it is evident from the testimony of the witnesses that confusion exists in locating this portion of Eugene Street southeast of the pillars of the Interstate. A good indication of this situation is shown in Exhibit-P-4 where the street sign itself leads an inquirer to believe that the portion of the street leading under the pillars of the Interstate is actually Honeysuckle Avenue instead of Eugene Street. Mrs. Reymond strengthens this observation when she related that delivery and service people had difficulty in finding her residence due to the situation. Inasmuch as only three other residences share these problems created by the construction of the Interstate, the Court finds that Mrs. Reymond’s property indeed suffered such special damages which were not related or common to those shared by other property in the neighborhood and for which compensation in the form of consequential damages should be allowed.”
Considering the evidence produced as to the accessibility of the Reymond home prior to and subsequent to the construction of Interstate 10, we certainly feel that special damages were caused petitioner which damages are recoverable under the provisions of Article 1, Section 2 of the Constitution. Certainly the damages to her property due to the location of the Interstate Highway cannot be considered general damages as were suffered by other residents of the whole subdivision or neighborhood.
*493 With regard to the quantum on such damages, Mr. Verdie Reese Perkins, a real estate appraiser, was qualified as an expert and testified that he was personally acquainted with Mrs. Reymond’s property prior to and subsequent to the construction of Interstate. He estimated the value of such property immediately before construction at $12,250.00, and estimated its value after construction at $6,000.00. He therefore estimated the diminution, or loss in value at the sum of $6,250.00.
Mr. Karl Snyder, another qualified real estate appraiser, testified as an expert on behalf of defendant, Department of Highways. Mr. Snyder testified, or rather admitted that he had made no estimate of the value of the property before construction as did Mr. Perkins. He did, however, estimate the present value of the property at the sum of $7,600.00 and testified that there was a loss in value to the property of $2,400.00, being the difference between what the property was worth without the factor-of Interstate and what it was worth with the factor of Interstate.
The Lower Court accepted the diminution in value as testified by Mr. Perkins and rejected the opinion of Mr. Snyder saying:
“While the Court recognizes Mr. Snyder’s ability and the features of his appraisal upon which he based his opinion, it must be noted that Mr. Snyder admitted that he made no estimate of the value of the property before construction as did Mr. Perkins. In order to apply the recognized rule for severance and consequential damages, it is necessary that the appraisers determine the value of the property before the taking, and in this case Mr. Snyder did not do so. Accordingly, the Court must give controlling weight to the opinion and findings of Mr. Verdie Reese Perkins, whose estimate as to the severance or consequential damages was in the amount of $6,-250.00.”
With regard to the question of damages to her residence caused by the construction activities, the petitioner claims that such construction, principally the pile driving operations, severely damaged her house and that Fruin-Colnon, the principal contractor, and Reymond International, Inc., the pile driving company, were negligent in the performance of their duties under their contracts which negligence resulted in the damage to her residence. Although counsel for petitioner claims negligence on the part of the contractors, the evidence is apparently devoid in this respect.
However, the petitioner cites Article 667 of the Louisiana Civil Code which provides :
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
The evidence discloses considerable evidence of damages to the Reymond home which could have been caused by vibrations from the pile driving operations. However, there is not one shred of evidence showing any negligence on the part of the Department of Highways, the principal contractor or the pile driving contractor, either in connection with the design or the construction of the project. The construction contract was accepted by the State as having been satisfactorily performed according to the plans and specifications.
The Lower Court was, therefore, correct in dismissing the suit as to the contractor, Fruin-Colnon, and in dismissing the third party suit against the pile driving contractor, Reymond International, Inc., under the holding in Myevre v. Boh Bros. Construction Co., La.App., 192 So.2d 859, in which the Court said:
“The decisions of the Court of Louisiana are uniform in holding that a contractor *494 is not responsible for damages sustained by property owners in the vicinity of works being constructed unless the property owner proves by a preponderance of evidence that the negligence of the contractor was the cause of the damage.”
The petitioner’s claim for structural damages to her home is, therefore, relegated to a claim for damages against the Department of Highways under the provisions of Article 667 of the Louisiana Civil Code which we quoted before.
The evidence clearly shows damage to the home of petitioner and the preponderance of this evidence leads us to conclude that this damage was caused by the pile driving activities during the course of construction of the Interstate Highway.
The defendant Department of Highways, however, contends that recovery under the provisions of Article 667 of the Civil Code is not permitted against political subdivisions. In support of this argument the defendant cites Klein v. Department of Highways, La.App., 175 So.2d 454, in which the Court said: “* * * we feel that the Department of Highways, as a political subdivision, would not be included within the coverage of LSA-C.C. art. 667.”
In granting recovery to plaintiff in this case without a proof of negligence on the part of the defendant, the Lower Court reasoned:
“* * * this Court is firmly of the opinion that even if the Klien [Klein] case bars recovery under Article 667 where the authority to sue is based on negligence, in the instant case the plaintiff has persuaded and obtained legislative authority to institute suit as if a taking had been by expropriation. It appears also that the Legislature intended to waive the State’s sovereign immunity in this respect and despite the apparition of the Klien [Klein] case, our holding herein is that if there has been a clear showing of damages to Mrs. Reymond’s property attributed to the operations conducted in construction of the Interstate, recovery may be obtained under the provisions of Article 667. State [Through Dept. of Highways] v. McGill [La.App.] 191 So.2d 346.”
In answer to defendant’s contention that as a state agency it is immune to suit based on LSA-C.C. Article 667, plaintiff advances three possible grounds upon which the suit may be maintained and damages recovered.
First, plaintiff argues, and the Lower Court accepted this argument, that by Act 302 of 1964 the state Legislature granted plaintiff the right to sue the Department of Highways as if the suit were, in fact, an expropriation. The cause would then fall within the rule of State, Through Department of Highways v. McGill, La.App., 191 So.2d 346, that recovery of damages under LSA-C.C. Article 667 was proper in expropriation proceedings brought under the provisions of LSA-R.S. 48:441-460. We cannot accept this position.
Act 302 of 1964 provides, inter alia:
“Be it enacted by the Legislature of Louisiana:
Section 1. Mabel M. Reymond is hereby authorized to file suit against the State of Louisiana, through the Department of Highways, upon her claim for damages alleged to have been sustained as a result of an expropriation, taking, or damaging of her property located at 3463 Eugene Street, in the City of Baton Rouge, East Baton Rouge Parish, Louisiana, being Lot 35 and portions of Lots 34 and 36, Square 23, Hundred Oaks Park, in said City and Parish, by reason of changing Eugene Street in said City, Parish and State so as to leave said property without an effective access and otherwise damaging and depreciating said property by reason of its being separated from other subdivided areas and thus isolated and inaccessible for residential purposes.
*495 ******
Section 6. Nothing herein contained shall be construed as conferring upon Mabel M. Reymond any different or greater claim or cause of action than was had before the adoption of this Act and, except as otherwise expressly provided herein, the effect of this authorization shall be nothing more than a waiver of prescription and a waiver of the state’s immunity from suit and from liability insofar as the suit herein authorized is concerned.
* * *»
Though the above quoted sections of the Act may contain language which allows the inference that the suit which it authorizes is one to recover damages resulting from an expropriation or taking, we are unable to perceive under what power the Legislature could classify a suit in a non-expropriation factual situation as one of expropriation inasmuch as the power granted to the Legislature to authorize expropriation, LSA-Const. Article 6, § #19.1, is limited to factual conditions not present in the matter before us. Expropriation is a technical and constitutionally limited device, and absent the proper circumstances there can be no expropriation. Even more obvious in pointing up the fallacy of this first argument advanced by plaintiff is the fact that the case was not tried in accordance with the provisions of LSA-R.S. 48:441 et seq. by which the Legislature fully exercised its constitutional powers to permit expropriation. Thus, we must find that this case is not one of expropriation and the rule of the McGill case, supra, inapposite to the present matter.
Moreover, the suit authorized by Act 302 of 1964, ordinary and delictual in nature, is limited in scope. The Act specifically limits the type of claims which plaintiff could assert. It waives the State’s sovereign immunity and allows plaintiff to sue only for property damages sustained “by reason of changing Eugene Street * * * so as to leave said property without an effective access * * *” and “* * * by reason of its being separated from other subdivided areas and thus isolated and inaccessable for residential purposes.” Nothing in this Act authorizes plaintiff to recover for structural damages to her home. If plaintiff is to recover these damages her claim must be based on authority other than Act 302 of 1964.
The second ground advanced by plaintiff as basis for this claim is the requirement of the Constitution that private property not be taken or damaged by the State except for a public purpose and after adequate compensation is paid. LSA-Const. Article 1 § 2. Plaintiff contends that the decision of Kendall v. State, Through Department of Highways, La.App., 168 So.2d 840, which held that a cause of action under LSA-C.C. Article 667 automatically arose under the above cited constitutional provision when a governmental agency engaged in a public undertaking which resulted in damage to private property, is apposite and grounds for this claim against the Department of Highways for recovery of damages to her home. The rule of the Kendall case, however, appears in conflict with the holding of the Louisiana Supreme Court in Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666, which requires “ * * * the intentional or purposeful expropriation or appropriation of private property for a public use or convenience” for the application of Article 1 § 2 of the Constitution of the State of Louisiana, that is the provision relates solely to cases of eminent domain. The rules of these two cases cannot be reconciled and we feel bound to follow the pronouncement of the Supreme Court. Therefore, plaintiff’s suit cannot be based on LSA-Const. Article 1 § 2.
Finally, plaintiff asserts a right to sue for structural damages to her home and to recover under the provisions of LSA-C.C. Article 667 under the holdings of recent cases that LSA-Const. Article 3 § 35 when read with LSA-R.S. 48:22 constitutes a general waiver by the Legislature *496 of the immunity of the Department of Highways from suit and liability. We find this position does provide a correct statement of the law and a ground for plaintiff’s claim for structural damages.
The validity of this basis for suit ex de-licto against a state agency without prior legislative authorization has evolved and been defined in several cases. The first breach in the State’s traditional immunity from a tort suit arising from the performance of a governmental function is Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529. In that case the Supreme Court held that a reading of Article 3 § 35 of the Constitution revealed:
“* * * that the Legislature is empowered to waive the immunity of the state and its political subdivisions from both suit and liability, and further specifically provides that ‘each authorization by the Legislature for suit against the State of other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes * * * as a waiver of the defendant’s immunity both from suit and from liability.’ ”
The Court then, in effect, held that the Legislature had waived the immunity of the City of Shreveport by including in its Charter the power to sue and be sued. Thereafter, this Court found that the rule of Hamilton was applicable to the Department of Highways. In Lambert v. Austin Bridge Company, La.App., 189 So.2d 752, we said:
“It is the opinion of this Court that in view of the decision of the Louisiana Supreme Court in the Hamilton v. City of Shreveport case, supra, this Court has no alternative but to hold that the immunity formerly enjoyed by the Department of Highways under R.S. 48:22 has been effectively waived by the enactment of Article 3, Section 35 of the Constitution of 1921, as amended by Acts 1960, No. 621 * * * ”
See also the discussion in Pierce v. Fidelity and Casualty Co. of New York, La.App., 205 So.2d 831.
We must therefore allow plaintiff’s claim against the Department of Highways based on the general waiver of the Department’s immunity from suit and liability accomplished by the enactment of LSA-R.S. 48:22 and LSA-Const. Article 3 § 35.
In this respect we note the conflict of this decision with the opinion of our brothers of the Fourth Circuit in Klein v. Department of Highways, 175 So.2d 454, 457, and upon which the defendant Department of Highways relies herein. We do not feel bound by the Klein decision, however, inasmuch as the Court there did not consider the applicability of the rule of the Hamilton case decided a few months earlier.
The final question is whether under this waiver of immunity a state agency may be sued and held liable for damages under the provisions of LSA-C.C. Article 667. When decided on the merits, Hamilton v. City of Shreveport, La.App., 180 So.2d 30, writ denied 248 La. 700, 181 So.2d 399, the Court considered this question with regard to municipalities, to-wit:
“Nor has any reason been advanced, and we know of none, why a municipality’s immunity from suit and liability granted pursuant to the amendment of Article 3, Section 35 of the Constitution should not apply to its liability under LSA-C.C. Arts. 660 and 667, as well as to liability under LSA-C.C. Art. 2315. No exception is made by this constitutional provision.”
We feel that this rule is equally applicable to the Department of Highways.
The evidence discloses that the damages to Mrs. Reymond’s property, which were not apparent before construction was commenced, were in the sum of $2,500.00. This figure was awarded by the Lower Court and was substantiated by the firm estimate of Mr. A. L. Drumwright, a *497 building contractor in the City of Baton Rouge. The Lower Court awarded petitioner damages in the sum of $6,250.00 for the diminution in value and $2,500.00 for structural damages to her home. We find no error in such awards and, for the reasons hereinabove given, the judgment of the Lower Court will be affirmed. All costs of this appeal to be paid by the defendant, Department of Highways.
Judgment affirmed.